UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **FRANK D. LAZZERINI**, | ) | CASE NO. 1:22-CV-01481-CEF |
| | ) | |
| Petitioner, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| **WARDEN ANGELA STUFF**, | ) | |
| | ) | **OPINION AND ORDER ADOPTING** |
| Respondent. | ) | **MAGISTRATE JUDGE'S REPORT** |
| | ) | **AND RECOMMENDATION (ECF NO.** |
| | ) | **18)** |

On August 18, 2022, Petitioner Frank D. Lazzerini ("Petitioner") filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). On December 5, 2022, Respondent Richland Correctional Institution Warden Angela Stuff ("Respondent") filed a Return of Writ. (ECF No. 11). On March 1, 2023, Petitioner filed the Traverse. (ECF No. 16). Respondent did not respond to the traverse. On August 9, 2024, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the Court deny and dismiss the petition and grant a certificate of appealability with respect to the first ground for relief. (ECF No. 18). Upon consideration of parties' objections, the Court **ADOPTS** the R&R. Petitioner's petition is hereby **DENIED** and **DISMISSED**. A certificate of appealability is **GRANTED** as to ground one and **DENIED** on all remaining grounds.

## I.    FACTUAL BACKGROUND

The Court **ADOPTS** Magistrate Judge Armstrong's findings of fact in Section II. (Relevant Factual Background). The Court adds that, on August 9, 2024, Magistrate Judge Armstrong issued an R&R recommending that this Court (1) deny Petitioner's Grounds Two,

Three and Four and (2) grant a certificate of appealability as to Dr. Lazzerini's first ground for relief.  (ECF No. 18, at PageID #13681).

Petitioner timely objected to the R&R on August 21, 2024.  (ECF No. 19).  Respondent timely objected to the R&R on September 4, 2024.  (ECF No. 22).  Petitioner then filed a response to Respondent's objections on September 12, 2024.  (ECF No. 23).  Petitioner claims that the Magistrate Judge erred when she concluded that Petitioner's exclusion from individual voir dire, a critical stage in the proceedings, was harmless error.  (ECF No.19, PageID #13742).  Petitioner also objects to the Magistrate Judge's finding that his constitutional right to effective assistance of counsel was not violated when his attorneys failed to object to prejudicial jury instructions.  (*Id.* at PageID #13756).  Petitioner argues that his constitutional right to due process of law was violated because the evidence was insufficient to support his convictions beyond a reasonable doubt.  (*Id.* at PageID #13760).  Petitioner also contends the imposed sentence of 113 years imprisonment constitutes cruel and unusual punishment.  (*Id.* at PageID #13760).  Finally, Petitioner claims that he should receive a certificate of appealability on grounds two, three, and four.  (*Id.* at PageID #13769).  Respondent objects to the Magistrate Judge's finding that Petitioner satisfied *Brecht* and her recommendation for the issuance of a certificate of appealability on ground one.  (ECF No. 22, PageID #13792).

## II.     LEGAL STANDARD

### A.     Jurisdiction

Title 28 U.S.C. § 2254(a) authorizes district courts to consider an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a state court." 28 U.S.C. § 2254(a).  A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State

court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Stark County Common Pleas Court sentenced Petitioner and is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

### B. Exhaustion of Available State Court Remedies

Under 28 U.S.C. § 2254(b)(1), a court may not grant a habeas petition unless it appears the petitioner has exhausted all available state court remedies, state corrective process is unavailable, or circumstances render such state process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). A petitioner must give the state courts a full and fair "opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Federal courts cannot exercise jurisdiction over a claim in a habeas petition if it was not "fairly presented" to the state courts on appeal. *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003). A claim is considered "fairly presented" if the petitioner asserted "a factual and legal basis for his claim in state court." *Id*. A petitioner has failed to exhaust state court remedies when those state remedies remain "at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

### III. DISCUSSION

#### A. Ground One: Petitioner's exclusion from individual voir dire was a violation of Petitioner's constitutional rights, but the effect of this violation was harmless.

This Court agrees with the Magistrate Judge's finding that Petitioner's exclusion from individual voir dire sessions of more than fifty jurors was a violation of his constitutional due process right to be present at every critical stage of the trial. However, since this error did not have a determinative, prejudicial effect on the outcome of the trial, it was harmless. (ECF No. 18, PageID #13706).

3

A defendant has the right to be present at all critical stages of the trial as afforded to him through portions of the Fifth and Sixth Amendments of the U.S. Constitution. *United States v. Gagnon*, 470 U.S. 522, 526 (1985).  The Supreme Court has determined voir dire to be  a critical stage of a criminal trial. *Snyder v. Commonwealth of Massachusetts*, 291 U.S. 97, 106 (1934). Even when a constitutional error occurred, it is subject to a harmless error analysis to determine whether the error resulted in actual prejudice to the petitioner. *Brecht v. Abrahamson*, 50 U.S. 619, 636 (1993).

### 1. Petitioner's exclusion from individual voir dire sessions was a violation of his due process rights.

No party, or court, has argued or found that it was proper to exclude Petitioner from individual voir dire sessions of over fifty jurors.  The Fifth Appellate District of Ohio, the last court to evaluate Petitioner's claims on the merits, held that the trial court erred when it excluded Petitioner from the individual voir dire sessions; it concluded, however, that this error was harmless.  (ECF No. 11-1, Page ID#7063–64).  The Magistrate Judge accepted that the trial court had committed an error and did not   further address the issue.  (ECF No. 18, PageID #13695). The Respondent did not object to the finding that the exclusion from voir dire was improper.  (ECF No. 22, PageID #13792).  As such, the trial court erred in excluding Petitioner, and now this Court must evaluate whether that error produced actual prejudice or was harmless.

### 2. Petitioner's exclusion from individual voir dire sessions was harmless error

Petitioner's exclusion from individual voir dire sessions was harmless. On collateral review, an error is not harmless only if it satisfies *both* the terms outlined in *Brecht* and the Antiterrorism & Effective Death Penalty Act ("AEDPA").  *Brown v. Davenport*, 596 U.S. 118, 127 (2022).  Satisfying the *Brecht* test is necessary but not alone sufficient to establish harmless

error when the State court ruled on the merits of a petitioner's direct appeal; AEDPA must also be satisfied. *Id*. Under 28 U.S.C. § 2254(d)(1), the district court cannot grant an application for a writ of habeas corpus "unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." "Clearly established federal law" is "the governing legal principle, or principles, set forth by the Supreme Court *at the time the state court renders its decision*." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (emphasis added). Petitioner provides a convincing argument that *Brecht* is satisfied but does not meet the high burden required by AEDPA.

### a. Brecht

This Court agrees with the Magistrate Judge that Petitioner satisfied *Brecht*; Petitioner's exclusion from individual voir dire resulted in actual prejudice. (ECF No.18, PageID #13701–02). On direct appeal, an error must be harmless "beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). However, on collateral review, habeas relief is only available to petitioners who show that error resulted in actual prejudice. *Davis v. Ayala*, 576 U.S. 257, 267 (2015). Actual prejudice exists where the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)). An error is not harmless if a jurist has "grave doubt" whether the error had a substantive effect on the outcome of a trial. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). Grave doubt means that, in the judge's mind, the matter is so evenly balanced she feels "in virtual equipoise as to the harmlessness of the error." *England v. Hart*, 970 F.3d 698, 714 (6th Cir. 2020) (quoting *McAninch*, 513 U.S. at 435).

5

Respondent objected to Magistrate Judge Armstrong's finding that *Brecht* was satisfied, arguing that Petitioner's exclusion was not substantially and injuriously prejudicial on the outcome of the trial.  (ECF No. 22, PageID #13795).  Respondent argues that even with competent counsel present throughout, Petitioner failed to raise any specific questions he would have asked that would have impacted the outcome.  (*Id.* at PageID #13804).  Respondent further argues that Petitioner's absence could have been *helpful* to his defense; Respondent highlighted the likelihood that jurors would have been more candid outside of his presence and that he tended to openly react to statements during proceedings.  (*Id.* at PageID #13806–07).

The Court has grave doubt as to the actual prejudice of Petitioner's exclusion from individual voir dire sessions.  The record indicates that the individual voir dire sessions comprised the majority of the overall voir dire process.  (ECF No. 11-9, PageID #8194–8267).  The individual sessions lasted approximately four hours.  (*Id.*)  These individual sessions encompassed substantive discussion on jurors' views on opioids, overprescription, whether opioids have had an impact on their lives, and their predispositions on the charges Petitioner faced.  (ECF No. 18, PageID #13699–700).  Several of the jurors provided clear indications of prejudice or issued contradictory remarks.  (*Id.*) Although Petitioner's counsel was present for the individual voir dire sessions, and at least once conferred with Petitioner, the exclusion hindered Petitioner's ability to meaningfully contribute to the process.  Considering Petitioner's unique position as a medical doctor, it is difficult to see how his presence would not have had some impact on the jury selection. He may have been able to guide his counsel in questioning individual jurors about medical histories or prejudices he has seen or experienced in practice.  Or he may have been able to identify jurors who expressed nuanced but impactful biases through their answers regarding questions on medical

6

practice.  Beyond his expertise as a medical professional, Petitioner, just as any criminal defendant, has the right to play a role in the selection of the jury who will decide their fate.

Ultimately, eight of the jurors selected were participants in the individual voir dire sessions. Whether Petitioner's presence would have ultimately changed the outcome of the jury selection is unclear.  This Court has grave doubt the error did not have substantial and injurious effects on the jury's verdict.  The exclusion of Petitioner from individual voir dire sessions therefore satisfies the *Brecht* standard.  Next, the Court turns to the AEDPA harmless error analysis, which Petitioner must also satisfy.

### b.  AEDPA

Petitioner's exclusion from individual voir dire was harmless error under AEDPA.  "A state court's harmless-error determination qualifies as an adjudication on the merits under AEDPA."  *Brown v. Davenport*, 596 U.S. 118, 127 (2022).  The state court must review harmlessness by applying the "harmless beyond a reasonable doubt" standard from *Chapman*. *Chapman v. California*, 386 U.S. 18, 24 (1967).  The federal court can then issue habeas relief only when the State court's harmlessness determination was unreasonable.  *Fry v. Pliler*, 551 U.S. 112, 119 (2007).  To be unreasonable, the state court's harmlessness determination must be contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  *Bell v. Hurley*, 97 F. App'x 11, 16 (6th Cir. 2004).  Overturning a state court's harmlessness determination, requires a petitioner to show that no fair-minded jurist could reach that state court's decision.  *Davenport*, 596 U.S. at 135.  *Brecht* asks only if "a federal habeas court *itself* harbors grave doubt about the petitioner's verdict", while AEDPA goes a step further asking, "whether *every* fair-minded jurist would agree that an error was prejudicial. . . ."  *Id.* at 136.

Petitioner objects to this portion of the Magistrate Judge's ruling, arguing that since the state court of appeals did not properly apply *Chapman*, AEDPA should not apply.  (ECF No.19, PageID #13742).  But the court of appeals did apply *Chapman* in its harmlessness determination on direct appeal.  It relied heavily on *State v. Williams*, which directly cited *Chapman* and applied the harmless "beyond a reasonable doubt" standard established in the *Chapman* decision.  452 N.E.2d 1323 (1983).  In fact, *Williams* applied the harmless "beyond a reasonable doubt" standard in conjunction with *Harrington v. California*, a Supreme Court decision that came two years after *Chapman* and relied heavily on the court's reasoning in *Chapman*.  As the court stated in *Williams*:

> Although we find the police officers' conduct and, consequently, the admission of the confession improper, we do not, however, conclude that such error is prejudicial.  Where evidence has been improperly admitted in derogation of a criminal defendant's constitutional rights, the admission is harmless "beyond a reasonable doubt" if the remaining evidence alone comprises "overwhelming" proof of defendant's guilt.  *Harrington v. California* (1969), 395 U.S. 250, 254.

452 N.E. 2d at 1333.  The Ohio Supreme Court applied *Chapman* in *Williams* both explicitly and implicitly, and the state appellate court's application of *Williams* constitutes an adjudication on the merits.  Therefore, AEDPA applies.  The Magistrate Judge aptly reasoned that any issue Petitioner has regarding the misapplication of *Chapman* in the appellate court's decision should be weighed in determining if its decision was contrary to established law.  (ECF No.18, PageID #13698).

Petitioner objects to the Magistrate Judge's finding that Petitioner's exclusion from individual voir dire was harmless error under AEDPA on two grounds.  (ECF No. 19, Page #13747).  First, Petitioner argues that "the Court of Appeals engaged in an unreasonable application of *Chapman*."  (*Id.*)  Second, the Petitioner argues the Court of Appeals engaged in an unreasonable determination of the facts based on the evidence presented at trial.  (*Id*. at PageID #13751).

Petitioner has not shown that the state appellate court's decision was contrary to, or an unreasonable application of, *Chapman*. The Magistrate Judge cited several cases in which a defendant's preclusion from voir dire to some extent was found to be harmless error. (ECF No. 18, PageID #13704).

Additionally, on direct appeal, when a defendant was excluded from portions of voir dire, but counsel was present throughout, the Sixth Circuit held the effect harmless. *United States v. Gibbs*, 182 F.3d 408, 437 (6th Cir. 1999). In *Gibbs*, during individual voir dire of ten prospective jurors, defendants were instructed to remain in the courtroom while counsel interviewed prospective jurors in a separate conference room. *Id*. at 436. Defendants were present throughout general voir dire of all other prospective jurors. *Id*. The court reasoned that the defendants were free to confer with their counsel, who were present throughout, and that the defendants were only excluded from small portions of the voir dire process. *Id*. at 437. However, this case was decided on direct appeal, which utilizes the *Chapman* standard of "harmless beyond a reasonable doubt." *Id*. at 438.

Considering *Gibbs* and the case law cited by the Magistrate Judge, this Court understands none of these precedents are an exact match to the facts of the case at bar; still, there is significant support that similar voir dire issues have been held harmless. *See, e.g.*, *Bland v. Sirmons*, 459 F.3d 999, 1021 (10th Cir 2006) (holding defendant's exclusion from individual voir dire for 32 jurors was harmless); *Wilder v. United States*, 806 F.3d 653, 659 (1st Cir. 2015) (holding that the effect of defendant's exclusion was too speculative to constitute actual prejudice); *Buie v. Rivard*, 2016 WL 2866401, at *13 (E.D. Mich. May 17, 2016) (holding that defendant's exclusion from a portion of voir dire when counsel was present did not amount to actual prejudice). Petitioner objected to the use of these cases in the Magistrate Judge's R&R and provided distinguishing facts of each.

This Court is unpersuaded that these cases are not still indicative of how other fair-minded jurists would hold in similar voir dire issues on habeas review.  This supports the conclusion that not *every* fair-minded jurist would find the error of precluding Petitioner from individual voir dire sessions as prejudicial.

Petitioner points to Justice Kagan's dissent from *Davenport* in support of his argument between finding an error prejudicial under *Brecht* but not under AEDPA to be at odds.  (ECF No. 19, PageID #13750).  In this dissent, Justice Kagan stated that the outcomes should be identical when using either *Brecht* alone or *Brecht* with AEDPA.  *Davenport*, 596 U.S. at 157 (Kagan, J., dissenting).  However, the majority, binding, opinion from *Davenport* requires the use of both standards and held in the case before it that *Brecht* was satisfied and AEDPA was not.  *Id.* at 145. As a result, this Court is not persuaded to accept Petitioner's argument that if his case satisfies *Brecht* it must also satisfy AEDPA.  *Brecht* requires that only the individual jurist has grave doubt that the error in question did not prejudice the outcome of the trial.  This was the standard the Supreme Court adopted for relief.  A Petitioner must also meet Congress's requirements for habeas relief in the AEDPA.  28 U.S.C. § 2254(d).  This Court cannot grant relief under one standard but ignore the other.  Only when both the Supreme Court's (*Brecht*) and Congress's (AEDPA) standards are satisfied can habeas relief be granted.  The test for each of these standards is unique, and just as in *Davenport*, the results in the present case yield satisfaction of *Brecht* but not the exceedingly high standards under AEDPA.

 Petitioner has not rebutted the state court's characterization of the individual voir dire sessions "by clear and convincing evidence."  *Burt v. Titlow*, 571 U.S. 12, 18 (2013).  Petitioner's arguments have weight regarding the state appellate court's characterization of his exclusion from individual voir dire proceedings.  The court of appeals described Petitioner's exclusion, *inter alia*,

as being limited to only a few jurors and largely dismissed the usefulness of his medical expertise to jury selection. However, a habeas court must take a deferential approach to the state court's factual findings. *Id.* The fact that this Court might disagree with these findings is of no moment. Like the Magistrate Judge, this Court concludes that reasonable minds might disagree as to whether the Fifth District's findings were unreasonable. (ECF No. 18, PageID #13705). Petitioner has not shown by clear and convincing evidence that the State's findings were unreasonable.

This Court, like the Magistrate Judge, has grave doubt whether the exclusion of Petitioner from individual voir dire sessions was prejudicial to the outcome of his trial. This is enough to satisfy the *Brecht* actual prejudice standard. Petitioner did not, however, show that every fair-minded jurist would find prejudice and thus did not satisfy the AEDPA standard. The state court's error of precluding Petitioner from individual voir dire sessions was a violation of Petitioner's right to be present at all critical stages. Nevertheless, under the AEDPA standard, the error was harmless as to the outcome of his trial.

### 3. *Petitioner's exclusion from individual voir dire does not qualify for habeas relief under footnote nine of* **Brecht**

Petitioner argues that his exclusion from individual voir dire qualifies under footnote nine of *Brecht* for habeas relief. This Court disagrees.

Footnote nine of Brecht states that the court "does not foreclose the possibility that in an unusual case, a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, might so infect the integrity of the proceeding as to warrant the grant of habeas relief, even if it did not substantially influence the jury's verdict." *Brecht*, 707 U.S. at 638, n.9. To this court's knowledge, there are few examples of the application of footnote nine. *See, e.g.*, *United States v. Harbin*, 250 F.3d 532, 544–45 (7th Cir. 2001) (holding that prosecutor's withholding peremptory challenges until the sixth day of trial was conduct that

qualified under footnote nine of *Brecht*); *Petrocelli v. Baker*, 862 F.3d 809, 830 (9th Cir. 2017) (Christen, J., concurring) (finding that footnote nine would have been an additional means to hold prosecutor's conduct prejudicial where prosecutor's psychologist visited the defendant while incarcerated without notice, without *Miranda*, and for the express purposes of using his statements at trial). In both *Harbin* and *Petrocelli,* footnote nine served as additional support for finding prejudice but was not central to the courts' conclusion.

Prosecutorial misconduct rampant in all stages of criminal proceedings by several high-ranking federal prosecutors was enough to justify a new trial under footnote nine of *Brecht*. *United States v. Bowen*, 799 F.3d 336, 352 (5th Cir. 2015). In *Bowen*, prosecutors anonymously posted comments about cases to influence public opinion and failed to investigate and substantially delayed investigations. *Id*. Government witnesses lied and overstepped, defense witnesses were intimidated, and gross sentencing disparities resulted from the government's practices. *Id*. The court reasoned that this systemic misconduct was the conduct envisioned by the *Brecht* court in writing footnote nine and found that this gross misconduct satisfied the standard to warrant a new trial. *Id.* at 353.

In the present case, Petitioner was excluded from a significant portion of individual voir dire but was represented by competent counsel and able to consult with his attorney at least once during that process. (ECF No. 11-9, PageID #8194–8267). Petitioner fails to point to any conduct by the government that was deliberate and egregious, or amounted to systemic misconduct akin to the aforementioned cases. The state court's error here does not rise to the level shown in *Harbin* or *Bowen*. Petitioner is not entitled to relief under footnote nine of *Brecht*.

12

Accordingly, the Court **OVERRULES** Petitioner's objections to the Magistrate Judge's finding that Petitioner's exclusion from individual voir dire was harmless error.  The Court **ADOPTS** the R&R and **DENIES** habeas relief as to Ground One.

### B.  Ground Two: Petitioner procedurally defaulted on his ineffective assistance of counsel claim.

Since Petitioner failed to exhaust state remedies on his ineffective assistance of counsel claim, that claim is procedurally defaulted.  When a petitioner has failed to fairly present their federal claim first to the state court, the claim is considered procedurally defaulted.  *Carter v. Mitchell*, 693 F.3d 555, 564 (6th Cir. 2012). "To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his or her claim." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  To avoid a procedural default, "petitioner's federal habeas petition must be based on the same theory presented in state court and cannot be based on a wholly separate or distinct theory." *Carter*, 693 F.3d at 568.  In the habeas context, "[e]ven the same claim, if raised on different grounds, is not exhausted for the purpose of federal habeas review." *Rayner v. Mills*, 685 F.3d 631, 643 (6th Cir. 2012).  A petitioner may, in limited circumstances, overcome a procedural default if he can show cause and prejudice to support his failure to comply with exhaustion. *Ege v. Yukins*, 485 F.3d 364, 378 (6th Cir. 2007).

Petitioner objects to Magistrate Judge Armstrong's finding that Petitioner procedurally defaulted on his ineffective assistance of counsel claim.  In the R&R, Magistrate Judge Armstrong concluded that Petitioner's ineffective assistance of counsel argument on habeas review was fundamentally different than the one he brought on direct appeal.  (ECF No. 18, PageID #13709). While both arguments addressed jury instructions, on direct review Petitioner argued that counsel did not object to the trial court's failure to adequately define two phrases in consideration of trafficking drugs: "legitimate medical purpose" and "usual course of medical practice and

13

treatment of patients under the laws regulating a physicians practice."  (ECF No. 18, PageID # 13708).  But on habeas review, Petitioner argued that his counsel did not object when the trial court judge failed to instruct the jury that the State must prove his specific violations of law governing the practice of medicine beyond a reasonable doubt.  (ECF No. 18, PageID #13709). Petitioner objects and argues that by including ". . . regarding the medical exception to the drug trafficking laws" in a heading of his appellate brief to the state court of appeals, he sufficiently raised the theory in state court.  (*Id.* at PageID #13757–58).  Petitioner also argues that the Magistrate Judge did not provide sufficient weight to the applicability of the holding in *Hemphill v. New York*, which he argues allows him the latitude to support his claim by any argument.  595 U.S. 140 (2022) (holding a petitioner's claim is properly preserved when the same issue is raised at all levels of direct review, even if the claim relies on different arguments).

In *Hemphill*, the Petitioner argued in state court the admission of testimony from an unconfronted witness was a violation of their Sixth Amendment right to confrontation pursuant to *Crawford*.  595 U.S. at 148–49.  The petitioner timely objected to this issue during trial, raised the Confrontation Clause issue in his appellate brief to the intermediate court of appeals, and reiterated that objection in their brief to New York's highest court.  *Id.*  Each of these arguments were centered on the same issue—the violation of Petitioner's Sixth Amendment right by the trial court allowing testimony from an unconfronted witness and each were heard on direct review.  *Id.*

In the present case, Petitioner did not raise the same issue with differing arguments at the state appellate court and for habeas review.  He raised two separate issues regarding jury instructions. At the state court of appeals, Petitioner raised the issue regarding counsel's failure to object to definitions set forth in jury instructions.

> ". . . Other than legitimate medical purposes and inconsistent with the usual course of medical practice and treatment of patients under the laws

regulating a physician's practice." (TV 19 p. 86–7). **Appellant's objection to the instruction referred to above, is the Court's failure to properly define those terms contained in that instruction.**

(ECF No. 11-1, PageID #6902). On habeas review, he again raises an issue with jury instructions. However, this time the argument is not about the definition of those same, or similar, terms. Instead, he argues that trial counsel failed to object to jury instructions that did not require the State to prove beyond a reasonable doubt that Petitioner violated specific statutes or regulations governing the practice of medicine. (ECF No. 1, PageID #20). These are not substantively different arguments regarding the same issue; they are two independent theories about two separate issues. Petitioner has not exhausted his ineffective assistance of counsel claim in state court. Nor did petitioner raise an argument of cause or prejudice that would support his failure to comply with the exhaustion requirement. Therefore, this court will not evaluate this claim on the merits because it is procedurally defaulted.

Accordingly, the Court **OVERRULES** Petitioner's objections to the Magistrate Judge's recommendation that Ground Two be denied as procedurally defaulted. The Court **ADOPTS** this part of the R&R.

### C.    Ground Three: There is sufficient evidence to support Petitioner's convictions.

Petitioner procedurally defaulted in part, and on the claims that reach the merits, he did not show that his convictions were unsupported by the sufficiency of the evidence. Petitioner objects to the Magistrate Judge's finding that he procedurally defaulted on his argument that the State failed to prove the inapplicability of the licensed health professional exemption. (ECF No. 19, PageID #13761). The Magistrate Judge reached the merits on two additional claims, finding that the evidence was sufficient to uphold the state court decisions. Petitioner objected to these findings, specifically arguing that the evidence was insufficient to show that he wrote prescriptions

15

without a legitimate medical purpose and outside of the usual course of medical care.  (*Id.* at PageID #13762).  Petitioner also objected to the Magistrate Judge's determination that the evidence was sufficient to find that a rational trier of fact could have found, beyond a reasonable doubt, that he committed involuntary manslaughter in the death of Jaimie Hayhurst and that the appellate court's sufficiency determination was reasonable.  (ECF No. 19, PageID #13764).

### 1. *Procedural Default*

Petitioner procedurally defaulted on his claim that the state failed to prove the inapplicability of the licensed health professional exemption.  When a petitioner fails to raise a claim on direct appeal when remedies are still available to them, the claim is procedurally defaulted and cannot be considered by the federal court on habeas review.  *Seymour v. Walker*, 224 F.3d 542, 549–50 (6th Cir. 2000).

On direct review, Petitioner failed to raise the applicability of the licensed health professional exemption.  (ECF No. 11-1, PageID #6897–98).  There is no mention of the licensed health professional exemption, nor any question as to the standard or regulations which Petitioner had allegedly violated, in Petitioner's appellate brief in the court of appeals.  (*Id.*)  However, in Petitioner's writ, under this ground for relief, he argues that the state court failed to apply the licensed healthcare professional exemption, and the State did not specify the regulations he had violated.  (ECF No. 1, PageID #23).  Petitioner admits he did not raise this specific argument in his appellate brief.  He argues that, under *Hemphill*, he should be awarded latitude to bring this claim now because he raised due process of law arguments elsewhere in his appellate brief.  (ECF No. 19, PageID #13761).  The Court is not persuaded that *Hemphill* provides any relief for Petitioner's failure to raise these issues previously.  As discussed under Ground Two, *Hemphill* does not offer a solution for claims that are functionally different between direct and habeas

review.  *Hemphill v. New York*, 595 U.S. 140 (2022).  Although Petitioner brought due process claims at all stages, he did not bring one regarding the licensed healthcare professional exemption until his federal petition.  Petitioner raised this argument without raising it first on direct review and therefore this Court cannot proceed to the merits.  Accordingly, Petitioner has procedurally defaulted on this claim.

As to the remaining two objections, Petitioner sufficiently raised these arguments on both direct and collateral review. The Court will address the merits of each of those arguments in turn.

### 2.  Merits

When a federal court is reviewing a challenge to a state court conviction based on a sufficiency-of-the-evidence argument, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 321 (1979).  The reviewing court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  The federal court is held to two layers of deference in sufficiency-of-the-evidence claims, as required by *Jackson* and AEDPA: (1) deference to the state court's findings of fact; and (2) the state court's rejection of a sufficiency challenge unless it was unreasonable. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).  The federal court's review of a state court conviction under a sufficiency-of-the-evidence argument is thus very limited. *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018).

### a.  Drug Trafficking, Aggravated Drug Trafficking, and Illegal Processing of Drug Documents

Petitioner objects to the Magistrate Judge finding that the evidence was sufficient to support his convictions beyond a reasonable doubt for drug trafficking, aggravated drug

trafficking, and illegal processing of drug documents. Specifically, Petitioner argues that the evidence was insufficient for a reasonable trier of fact to find, beyond a reasonable doubt, that he wrote prescriptions without a legitimate medical purpose and outside of the usual course of medical care.

Petitioner points to two main sources of support for his argument. First, he contends that the State's expert witness, Dr. Parran, testified that pain is subjective, and that there is some disagreement on how to treat pain among medical professionals. (ECF No. 14-6, PageID #10545–48). Dr. Parran also testified that Petitioner's practice of using the Ohio Automatic Rx Reporting System (OARRS) and urine drug screening were "good practices," and that petitioner conducted follow-up visits and charted how patients responded to the medications. (*Id.* at PageID #10551; 10556–58). Second, he asserts that Petitioner's expert testified that the prescriptions were written in accordance with applicable standards, and that a "pill mill" only provides a simple transaction where the physician receives compensation for a prescription for opioids and no medical care is provided. (Id. at PageID #12117–18; 12234).

Both experts' testimony is relevant and probative of whether Petitioner was guilty beyond a reasonable doubt of the accused crimes, but their testimony does not present evidence sufficient to find that no reasonable trier of fact could have found him guilty. The record of Dr. Parran's testimony is several hundred pages long; it is not a surprise that he would, over that period, concede on a few isolated occasions that some of Petitioner's actions were proper. Petitioner fails to address that the overwhelming record of testimony the state's expert provided weighs in favor of guilt. Dr. Parran reviewed approximately 50 of Petitioner's patient files to draft his expert report; he testified about Petitioner's practices in numerous individual files as being "inconsistent with the usual course of medical practice and for other than legitimate medical purposes" (*see, e.g.,*

ECF No. 14-4, PageID #9955; 10038; ECF No. 14-5, PageID #10067); he also described Petitioner as an "out-of-control prescriber".  (*See, e.g.*, ECF No. 14-4, PageID #9896–9903; *see also id.* at PageID #9945 (calling Petitioner an "out-of-control prescriber" with "just plain dangerous" prescribing practices)).  Petitioner's expert provided testimony highlighting the incongruence between his definition of "pill mill" and the facts in the present case, but this was insufficient to outweigh the evidence presented that was highly probative of a contrary conclusion.

The state court's determination that the evidence was sufficient to find the Petitioner guilty beyond a reasonable doubt of drug trafficking, aggravated drug trafficking, and illegal processing of drug documents was reasonable.  This Court will defer to that finding.  Additionally, the state appellate court's direct review of this argument was reasonable and specifically addressed the sufficiency of the evidence:

> {¶81} Appellant next argues the verdict is against the weight and sufficiency of the evidence because the jury had to review extensive "mind-numbing" patient medical records, expert reports, and jury instructions. However, this is no different than many other complicated jury trials, both criminal or civil.  We find the mere fact the jury was faced with a difficult task in reviewing the records does not render the verdict against the weight or sufficiency of the evidence.  The State and the trial court assisted the jury with explanations of the indictments, definitions of the drug charges and medical terminology, expert witness testimony to explain the medical records, and summaries of the evidence.  We find the record does not demonstrate the jury lost its way in its consideration of the extensive medical evidence presented in the case.
>
> {¶82} Finally, Appellant argues the State failed to provide expert testimony concerning each count in the indictment or for each prescription.  As discussed earlier in our discussion of the major drug offender specification, Appellant stipulated to the prescriptions given each patient.  At page 36 of its brief, the State has cited to the places in the transcript where Dr. Parran testified concerning the course of treatment and the prescriptions given to each of the 42 patients named in the indictment.  His extensive testimony as to each individual patient extends from page 170 of volume 8 of the transcript through volume 10, page 177 of the transcript.  As to each and every patient, Dr. Parran explained how Appellant's entire pattern of prescribing of controlled substances was done in a manner inconsistent with

19

> the usual course of medical practice and for other than a legitimate medical
> purpose.  We find the convictions of trafficking, aggravated trafficking and
> illegal processing of drug documents are not against the manifest weight or
> sufficiency of the evidence.

(ECF No. 11-1, PageID #7091).  The petitioner has not shown that the evidence was insufficient
to support the trier of fact concluding, beyond a reasonable doubt, that he wrote prescriptions
without a legitimate medical purpose and outside of the usual course of medical care.  Petitioner
has not shown that either the trial or appellate court's determination was unreasonable.  Therefore,
this Court defers to the findings of the state courts and **DENIES** Petitioner's sufficiency of the
evidence claim as it relates to his argument regarding the drug trafficking, aggravated drug
trafficking, and illegal processing of drug documents convictions.

### b.  Involuntary Manslaughter

Petitioner objects to the Magistrate Judge's finding that the evidence was sufficient to
support his conviction for involuntary manslaughter of Jaimie Hayhurst. Petitioner argues his
actions were not the "but-for" cause of Ms. Hayhurst's death.  (ECF No. 19, PageID #13764).
Petitioner cites evidence that, by the time he became Ms. Hayhurst's primary care physician in
2013, her health was already poor; she suffered from emphysema, chronic pulmonary obstruction
disease, deep vein thrombosis, obstructive sleep apnea, inflammatory lung disease secondary to
pulmonary embolism, and morbid obesity.  (*Id.*)  Petitioner did not prescribe opioids to Ms.
Hayhurst at first and referred her to several medical specialists.  (*Id.* at PageID #13764).  An
independent physician certified she was terminally ill and that she qualified for hospice care, and
later she entered hospice care.  (*Id.* at PageID #13764–66).  While in hospice care, Ms. Hayhurst
was compliant with the prescriptions provided by Petitioner and was monitored by the hospice
staff.  (*Id.* at PageID #13766).  Ms. Hayhurst was discharged from hospice, and Petitioner then
dismissed her from his care for no longer being compliant with his prescriptions, since her

urinalysis results were negative for opioids. (*Id.*) However, Ms. Hayhurst's prescription provided for a refill that could be filled beyond the time she had last seen Petitioner. (*Id.*) Ms. Hayhurst was found dead in her home one week after last seeing Petitioner. (*Id.* at PageID #13767).

The Magistrate Judge cited the state appellate court's decision in which Dr. Frank Miller, the Chief Deputy Coroner of Lorain County, and an independent forensic pathologist, Dr. Renee Robinson, both found that the cause of Ms. Hayhurst's death was drug toxicity. (ECF No. 18, PageID #13716–17). The appellate court reasoned that "[t]he State presented expert testimony which, if believed by the jury, would support the jury's finding Apellant's prescription drugs were the 'but for' cause of Jaimie's Hayhurst's death." (ECF No. 11-1, PageID #7091).

This Court must give deference to both the state trial court and court of appeals. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012); *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). The state appellate courts' reasoning is sound; viewed in a light most favorable to the prosecution, the state's expert testimony could have led a rational trier of fact to find that the essential elements of involuntary manslaughter[1] beyond a reasonable doubt. Ms. Hayhurst's poor health does not support a finding that the Petitioner's conviction for involuntary manslaughter—resulting from an overdose of opioids prescribed by Petitioner—was improper.

This Court finds that Petitioner procedurally defaulted on his sufficiency of the evidence argument regarding his argument for inclusion of the licensed healthcare professional exemption. Additionally, for the claims in which the merits were reached, Petitioner failed to show the evidence was insufficient for a rational trier of fact to find guilt beyond a reasonable doubt.

---

[1] Applicable here, Ohio's involuntary manslaughter statute states, "No person shall cause the death of another . . . as a proximate result of the offender's committing or attempting to commit a felony." Ohio Rev. Code Ann. § 2903.04(A) (West 2025).

Accordingly, the Court **OVERRULES** Petitioner's objections to the Magistrate Judge's recommendation that Ground Three should be denied as procedurally defaulted in part and denied on the merits in part.  The Court **ADOPTS** this part of the R&R.

> **D.     Ground Four: Petitioner's sentence does not constitute cruel and unusual punishment in violation of the Eighth Amendment.**

Petitioner objects to the Magistrate Judge finding that his sentence of 113 years imprisonment did not constitute cruel and unusual punishment under the Eight Amendment. Specifically, Petitioner objects to the Magistrate Judge concluding that (1) his claim that the court acted vindictively when it sentenced him to 113 years after he had rejected a plea offer for 27 years was unsupported by evidence; and (2) his sentence was not disproportionate to the crimes for which he was convicted.  (ECF No. 19, PageID #13768).

In its entirety, the Eighth Amendment to the United States Constitution provides "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  Only sentences that are grossly disproportionate to the crime committed are prohibited under the Eighth Amendment.  *Rummel v. Estelle*, 445 U.S. 263, 271 (1980).

> ### 1.  *Vindictiveness*

Petitioner has not shown the trial court acted vindictively when it sentenced him to 113 years of imprisonment.  Petitioner "bears the burden of showing actual vindictiveness through the presentation of direct evidence."  *United States v. Rodgers*, 278 F.3d 599, 604 (2002) (citing *Wasman v. United States*, 468 U.S. 559, 569 (1984); *United States v. Jackson*, 181 F.3d 740, 745–46 (6th Cir. 1999)).  The Supreme Court in *Bordenkircher v. Hayes*, held that "by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the

22

defendant to forgo his right to plead not guilty. 434 U.S. 357, 367 (1978); *see Reed v. Forshey*, No. 5:15CV331, 2016 WL 8674571, at *14 (N.D. Ohio Sept. 23, 2016), *report and recommendation adopted*, 2017 WL 242274 (N.D. Ohio Jan. 20, 2017) (by petitioner rejecting a plea deal, which he was free to accept or decline, he knowingly assumed the risk of a harsher punishment at trial).

At no stage has Petitioner offered direct evidence that his 113-year sentence was the result of vindictive sentencing by the trial court. The state court of appeals found, "Appellant has cited to nothing in the record demonstrating the sentence was based on or influenced in any way by his rejection of a plea bargain and his decision to go to trial." (ECF No. 18, PageID #13719). This Court also finds that Petitioner did not provide any support for this claim in any of the materials provided for habeas relief. Petitioner bears the burden to provide actual evidence of vindictiveness, and he has not done so.

### 2. *Proportionality of the Sentence to the Counts of Conviction*

Petitioner also has not shown that his sentence was grossly disproportionate to the offenses for which he was convicted. A court's proportionality analysis should be guided by three objective factors, (1) "the gravity of the offense and harshness of the penalty, [2] the sentences imposed on other criminals in the same jurisdiction, and [3] the sentences imposed for commission of the same crime in other jurisdictions." *Solem v. Helm*, 463 U.S. 277, 291 (1983). In "determining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime [,] [a] court must begin by comparing the gravity of the offense and the severity of the sentence." *United States v. Lafond*, 692 F. App'x 242, 244 (6th Cir. 2017) (quoting *Graham v. Florida*, 560 U.S. 48, 60 (2010).

Here, Petitioner was convicted of 187 counts. This includes one count of engaging in a pattern of corrupt activity, one count of involuntary manslaughter, one count of Medicaid fraud, eight counts of aggravated trafficking of drugs with major drug offender specifications, and over fifty counts of aggravated trafficking of drugs without a major drug offender specification. (ECF No. 11-1, PageID #6814–34).

The sheer volume of the counts of conviction, including no less than twenty-nine counts of felonies of the first degree, speaks to gravity of the offense. (*Id.* at PageID #6824); Ohio Rev. Code § 2901.02(A) (West 2025). The sentence (113 years of imprisonment) is a harsh penalty; but, when considering the harshness in light of the potential penalties available at law and the gravity of the offenses, the penalty is proportional. If we consider the minimum penalty for each of the felonies of the first degree, which is three years, and if all sentences ran consecutively, the statutory minimum, for the felonies of the first degree alone, would be 87 years. Ohio Rev. Code § 2929.14(A)(1)(a). This would leave over 150 counts of varying felony levels to consider in the overall sentencing calculation.

This Court need not survey all penalties imposed for the same or similar crimes throughout Ohio to explore the second factor from *Solem*. Not one of Petitioner's counts of conviction was sentenced outside the statutorily allowable limit under Ohio law, many of the offenses were sentenced at the statutory minimum, and the total volume of counts support the finding that Petitioner's sentence was proportional. (ECF No. 11-1, PageID #6814–34).

Petitioner did not raise whether the penalties he received were disproportionate to the same, or similar crimes, in other jurisdictions. Regarding this last factor, the *Solem* court provided that courts "*may* find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions." 463 U.S. 277, 291. This Court does not find this practice useful in this case.

24

Considering the number of counts under varying statutes, the complex web of sentencing calculations makes it uniquely difficult to isolate individual sentencing counts for comparison to offenses in other jurisdictions.  Petitioner has not pointed to any one specific count, or group of counts, where he challenges the proportionality of the offense in comparison to any other jurisdiction.  Therefore, this Court will not evaluate each sentence to each individual count *sua sponte* and as such assigns little weight to this *Solem* factor.

In sum, Petitioner's sentence of 113 years imprisonment is proportional considering the offenses committed, the number of counts of conviction, and the individual penalties for each offense are not in excess of any statutory standard.  Furthermore, Petitioner has not shown any actual evidence that the sentence was vindictive.  Therefore, the sentence imposed did not violate Petitioner's Eighth Amendment Rights.

Accordingly, the Court **OVERRULES** Petitioner's objections to the Magistrate Judge's recommendation that Ground Four be denied.    The Court **ADOPTS** this part of the R&R.

> **E.** **This Court does not issue a certificate of appealability on ground one. Petitioner was properly denied certificate of appealability for grounds two, three, and four.**

The Court **ADOPTS** the recommendation in the R&R for denial of Petitioner's request for a certificate of appealability as to grounds two, three, and four.  The Court also ADOPTS the recommendation in the R&R to issue a certificate of appealability as to ground one as recommended.  (ECF No. 18, PageID #13681).

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability ("COA") and specifies the issues that can be raised on appeal.  28 U.S.C. § 2253(c).  A COA may be granted "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Should a

district court determine a petitioner's constitutional claim lacks merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  "[A] court should not grant a [COA] without some substantial reason to think that the denial of relief might be incorrect."  *Moody v. United States*, 956 F.3d 485, 488 (6th Cir. 2020) (quoting *Slack*, 529 U.S. at 484).  Put another way, "a [COA] is improper if any outcome-determinative issue is not reasonably debatable."  *Moody* 956 F.3d at 488.

Petitioner objects to the Magistrate Judge's denial of a certificate of appealability on grounds two, three, and four.  (ECF No. 19, PageID #13769).  Petitioner argues, as to the grounds in which he procedurally defaulted, that "he has stated a valid claim of a constitutional right and that reasonable jurists can reasonably debate whether the Magistrate Judge's procedural ruling was correct."  (*Id.*)  Petitioner argues, as to the claims the Magistrate Judge evaluated on the merits, that he has provided a substantial showing to support the issuance of a COA.  (*Id.*).

The Court may "reject an issue for appeal if the procedural default doctrine applies."  *Cooey v. Coyle*, 289 F.3d 882, 887 (6th Cir. 2002) (citing *Slack*, 529 U.S. at 483).  These claims never reached the merits because they failed to meet the standards of procedure.  As to the claims in which the merits were reached, Petitioner has not provided a substantial showing to provide relief nor to warrant the issuance of a COA.

Though the Court does not believe its analysis of the AEDPA issue in ground one to be "debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), Petitioner has provided a substantial showing of a constitutional violation regarding his first ground of relief.  In fact, the Court has found that Petitioner has met the *Brecht*

26

standard for actual prejudice.  While the Court found the constitutional error to be harmless under the AEDPA standard, the gravity of the violation warrants the issuance of a certificate of appealability.  As such, this Court **GRANTS** a certificate of appealability on Ground One alone. The Court finds that Petitioner has not provided a substantial showing on Grounds Two, Three, or Four and **DENIES** a certificate of appealability on those grounds.

## IV.     CONCLUSION

Accordingly, the Court **ADOPTS** the R&R and incorporates it herein by reference.  The Court hereby **DENIES** and **DISMISSES** the Petition.  The Court **CERTIFIES**, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal of  this decision may be taken in good faith as to Ground One, and that there is basis upon which to issue a certificate of appealability as to that claim; the Court further **CERTIFIES**, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal of this decision as to Grounds Two, Three and Four cannot be taken in good faith, and that there is no basis upon which to issue a certificate of appealability as to those claims.  Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c).

**IT IS SO ORDERED.**

Dated: December 4, 2025

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**